**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**
**RENO, NEVADA**

| | |
|---|---|
| STEPHEN PYLE, RHONDA HINKLE, )<br>and DON KUDER, )<br> )<br>    Plaintiffs, )<br> )<br>vs. )<br> )<br>RICHARD CRAWFORD, MICHELLE )<br>KNIGHT, ESMERALDA COUNTY AND )<br>ESMERALDA COUNTY SHERIFF'S )<br>OFFICE, FRANK LAWRENCE and )<br>DOES I-X, )<br> )<br>    Defendants. )<br>_____ ) | 3:04-CV-0443-ECR-VPC<br><br><br><br>**ORDER** |

## I. Procedural Background

On August 18, 2004, Plaintiffs Stephen Pyle, Rhonda Hinkle and Don Kuder ("Plaintiffs") filed a Complaint (#2) against Richard Crawford, Michelle Knight, Esmeralda County and Esmeralda County Sheriff's Office and Frank Lawrence ("Defendants") alleging claims of conspiracy to violate civil rights, false arrest, malicious prosecution, battery and excessive force, intentional infliction of emotional distress, deprivation of property, violation of due process, negligence, abuse of process, false imprisonment, and defamation. On October 20, 2005, Defendants[1] filed a Motion for Summary Judgment (#16). On December 17, 2005, Plaintiffs opposed

_____

[1]Not including Frank Lawrence.

Defendant's Motion (#21) and on January 19, 2006, Defendants replied (#25).  The motion (#16) is ripe, and we now rule on it.

For the reasons stated below, Defendants' motion (#16) will be granted in part and denied in part.

## II.   Statement of Facts

This controversy arises out of the transfer of ownership of two pick up trucks and a trailer.  The titles of ownership and how such property came to be possessed by Plaintiff Stephen Pyle is of much debate.

Plaintiffs allege that Frank Lawrence held a garage sale in the front of his apartment located in the Tonopah Apartments at some point during July 2002.  During this sale, Stephen Pyle's son, Merle Pyle, purchased personal property from Lawrence including two pick up trucks and a 0.22 rifle for approximately $1,000.00.

Merle then gave both of the pick up trucks, a 1979 Ford pick up and a 1989 Dodge Ram pick up, to his father, Stephen Pyle.  The titles on the vehicles were never registered in either Merle Pyle or Stephen Pyle's names.  Stephen Pyle then exchanged the 1989 Dodge Ram truck for a trailer with Don Kuder.  Kuder registered the Dodge Ram pick up truck in his name.   Stephen Pyle sold the 1979 Ford pick up truck to Christopher Alan Patton.

Lawrence was admitted to Lake's Crossing, a rehabilitation center, in July 2002 and was released in September 2002.  Before Lawrence was admitted, Defendants claim Stephen Pyle asked Lois Lawrence, Frank Lawrence's wife, to exchange apartments.  During this move, Defendants claim, Frank Lawrence asked Stephen Pyle to

2

locate the titles for the two pick up trucks.  Defendants claim
Pyle told Lawrence he was unable to locate the titles.

        After he was released from Lake's Crossing, Lawrence reported
the theft of his 1979 Ford pick up and 1989 Dodge Ram pick up to
the Esmeralda County Sheriff's Department.  Richard Crawford, of
the Esmeralda County Sheriff's Office, investigated the matter.

        Crawford located the 1979 Ford pick up in the possession of
Christopher Alan Patton.  Patton claimed that he had purchased the
vehicle from Stephen Pyle in July 2002 and showed Crawford the
title to the vehicle.  Patton provided Crawford with a copy of a
check for two hundred dollars which constituted partial payment for
the truck.

        Lawrence told Crawford that he had purchased the 1979 Ford
pick up from Skeeter Jeffries for $1,500.00.  Crawford obtained
confirmation of this sale from Jeffries.

        Crawford located the 1989 Dodge Ram pick up in the possession
of Don Kuder.  Kuder claimed that Stephen Pyle had traded the
trailer to Stephen Pyle for the Dodge pick up truck.

        Crawford also interviewed Mrs. Lawrence concerning the
vehicles.  Mrs. Lawrence explained that Stephen Pyle had requested
to switch apartments with the Lawrences and that they had complied.
At that time, Frank Lawrence had asked Stephen Pyle to locate the
titles for his two vehicles and Pyle informed Lawrence that he
could not locate them.

        Based upon this investigation, Crawford obtained an arrest
warrant for Stephen Pyle on two counts of grand larceny of a motor
vehicle.  The arrest warrant was issued by Justice of the Peace

3

Juanita Colvin on January 30, 2003, and was executed on January 31, 2003, at approximately 8:31 a.m.

Crawford claims that he approached Pyle in his apartment at the Tonopah Apartments with the criminal complaint and advised him of his rights.  Pyle claims that he was not shown the criminal complaint and was not advised of his rights.  Pyle claims that Crawford informed him that Crawford's boss, Michelle Knight, had ordered him to do "what he was doing."

Pyle insisted on speaking with his girlfriend, Rhonda Hinkle. Crawford complied with this request.  Crawford accompanied Pyle to the apartment complex office.  At that point, Pyle answered the cordless business phone in the office.  Crawford advised Pyle to end the conversation and when he did not, Crawford placed a handcuff on Pyle's right hand and asked him to place his other hand behind his back.  Pyle did not comply.

Hinkle claims that she approached Pyle to get the phone out of his hands and when she did, she was pushed by Crawford so hard that she fell backwards three or four feet.  Pyle claims that at this time, Crawford forced him against the end of his desk and handcuffed his left hand.  Pyle claims that he was screaming and crying due to the fact that the handcuffs were too tight and when he complained of this to Crawford, Crawford just laughed and refused to loosen the cuffs.  Crawford claims that he put his fingers between Pyle's wrist and the handcuff to make sure they were not too tight.

Pyle was taken to the Esmeralda County jail.  At the jail, Pyle complained of pain to his wrists and was taken to the Nye

4

Regional Medical Center.  Pyle posted bail at 12:13 p.m. on January 31, 2003.  Pyle was taken back to the Esmeralda County Jail and was released at 5:00 p.m. on January 31, 2003.

In connection with the execution of the arrest warrant, Crawford impounded the 1979 Ford pick up and the 1989 Dodge Ram pick up as well as the trailer.

The criminal case for grand larceny was dismissed by the Esmeralda District Attorney's Office.  The vehicles which had been impounded were returned to their respective owners – the trailer to Stephen Pyle, the 1979 Ford pick up to Patton, and the 1989 Dodge Ram pick up to Kuder.

**III.  Discussion**

**A.   Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists.  <u>Northwest Motorcycle Ass'n v. U.S. Department of Agriculture</u>, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party, <u>Bagdadi v. Nazar</u>, 84 F.3d 1194, 1197 (9th Cir. 1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party.  Fed. R. Civ. P. 50(a).  Where reasonable minds could differ on the material facts at issue, however, summary judgment should

not be granted.  <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 116 S.Ct. 1261 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form-- namely, depositions, admissions, interrogatory answers, and affidavits--only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.  Fed. R. Civ. P. 56(c); <u>Beyene v. Coleman Security Services, Inc.</u>, 854 F.2d 1179, 1181 (9th Cir. 1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) it must consider that evidence in light of the appropriate standard of proof.  <u>Anderson</u>, 477 U.S. at 248.  Summary Judgement is not proper if material factual issues exist for trial.  <u>B.C. v. Plumas Unified Sch. Dist.</u>, 192 F.3d 1260, 1264 (9th Cir. 1999).  "As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson</u>,

477 U.S. at 248.  Disputes over irrelevant or unnecessary facts should not be considered.  Id.  Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law.  Celotex, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole.  Id.

**B.  Conspiracy to Commit Civil Rights Violation**

Plaintiffs have claimed a conspiracy to commit a civil rights violation under 42 U.S.C. § 1983.  Defendants have moved for summary judgment on this count on the basis that Plaintiffs have failed to establish a conspiracy or a violation of a civil right under 42 U.S.C. § 1983.[2]

In order to prove a civil conspiracy claim, Plaintiffs must provide evidence that there was an agreement or meeting of minds to violate a constitutional right.  Fonda v. Gray, 707 F.2d 435 (9th Cir. 1983).  Because Plaintiffs cannot prove a meeting of the minds in regard to a civil rights violation, their claim of civil conspiracy will be dismissed.

In particular, Plaintiffs must provide factual support (meaning specific facts) that there was an agreement between Crawford and Knight or any other member of the Esmeralda County

---

[2]We analyze Plaintiffs' claim for conspiracy to violate civil rights under 42 U.S.C. § 1983 because we fail to see how 42 U.S.C. §§ 1981, 1985, or 1986 would be applicable to this case.  In particular, 42 U.S.C. § 1981 involves racial discrimination, and §§ 1985 and 1986 also involve class based racial discrimination.  Therefore, we will use 42 U.S.C. § 1983 for our analysis.

Sheriff's Office.  <u>See</u> <u>Woodrum v. Woodward County, Okl.</u>, 866 F.2d 1121, 1126 (9th Cir. 1989).  Although Plaintiffs allege that Crawford told Pyle that Knight "told him to do what he was doing," this does not prove a meeting of the minds of behalf of Crawford and Knight and does not demonstrate that Knight had authorized Crawford's actions.  <u>See</u> <u>Lockary v. Kayfetz</u>, 587 F. Supp. 631 (D.C. Cal. 1984) (allegations of conspiracy must be supported by material facts, not merely conclusory statements).  Plaintiffs have not presented sufficient genuine issues of material fact to show that conspiracy existed under 42 U.S.C. § 1983 in order to survive a motion for summary judgment on this claim.

Therefore, Defendants' Motion for Summary Judgment as to the claim of civil conspiracy will be granted.

**C. False Arrest/False Imprisonment**

Plaintiffs claim that Stephen Pyle was falsely arrested because "Defendants had no reasonable or rational belief that Plaintiff had, in fact, committed a crime of any kind and that the only information they had accusing the Plaintiff of this crime came from a man with known mental instability and alcoholic tendencies." Plaintiff's claim for false imprisonment relates to this claimed false arrest insofar as Stephen Pyle was unlawfully detained in jail as a result of Defendants' arrest of Pyle.

False imprisonment is a Nevada state law claim based in common law.  The Nevada Supreme Court has established that in order to establish a prima facie case for false imprisonment based on false arrest, it is "necessary to prove that the plaintiff was restrained

8

of his liberty under the probable imminence of force without any legal cause or justification." Garton v. City of Reno, 102 Nev. 313, 315, 720 P.2d 1227 (1986)(quoting Marschall v. City of Carson, 86 Nev. 107, 110, 464 P.2d 494 (1970) and Hernandez v. City of Reno, 97 Nev. 429, 433, 634 P.2d 668 (1981)). To this end, "a police officer is not liable for false arrest or imprisonment when he acts pursuant to a warrant that is valid on its face . . . The facially valid warrant provides the legal cause or justification for the arrest, in the same way that an arrest made with probable cause is privileged and not actionable." Nelson v. City of Las Vegas, 99 Nev. 548, 552, 665 P.2d 1141 (1983) (internal citations omitted).

Plaintiffs contest the validity of the warrant but fail to put forth any evidence of its invalidity. Plaintiffs claim that Crawford "did not conduct a reasonable investigation, relying only on evidence that supported his desired result of arresting Plaintiff Stephen Pyle." Plaintiffs also claim, but have not presented any evidence to this end, that Crawford, "misrepresented the facts to the court." Regardless of Plaintiffs' characterization of Defendant Crawford's motives, Plaintiffs have not presented any evidence that the warrant pursuant to which Crawford arrested Pyle was invalid and that Crawford lied to the Justice of the Peace in obtaining the warrant.[3] Because of this,

---

[3]Plaintiffs do not present any evidence as to what statements Crawford made to the Justice of the Peace that were false and how the Justice of the Peace relied on those false statements in granting the arrest warrant. Plaintiffs cite to Baldwin v. Placer County, 405 F.3d 778 (9th Cir. 2005) for the proposition that civil rights are violated by presentation of a false affidavit to the Magistrate granting the arrest warrant. While Plaintiffs are correct that Baldwin established

Plaintiffs' claim of false imprisonment due to the claimed false arrest will be dismissed.

As for the claim of false arrest under 42 U.S.C. § 1983, "an arrest is privileged if it is made pursuant to a warrant which is regular in form and which reasonably appears to have been issued by a court with jurisdiction." Arnsberg v. United States, 757 F.2d 971, 979 (9th Cir. 1985).[4]  Here, Plaintiffs, as stated above, have not presented evidence that the arrest warrant was facially invalid and that the Justice of the Peace was without jurisdiction to issue the warrant.  Because of this, the arrest Crawford made was privileged and cannot be challenged by a claim of false arrest.

**D.  Excessive Force**

As 42 U.S.C. § 1983 does not provide specific substantive rights, Plaintiffs must specify which federal right they seek to be vindicating. Graham v. Connor, 490 U.S. 386, 394 (1989).  "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Id.  Here, Plaintiff has alleged a violation of the Fourth Amendment

---

such a rule of law, Plaintiffs have not provided sufficient evidence that Crawford presented a false affidavit to the Justice of the Peace in obtaining the warrant.  Because of this stark difference, this case is distinguishable from Baldwin and we see no basis in applying that rule of law to the facts at hand.

[4]In addition, as the Supreme Court has held, police officers who are sued under 42 U.S.C. § 1983 for false arrest have qualified immunity meaning that they are shielded for liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Malley v. Briggs, 475 U.S. 335, 340 (1986).

10

prohibition against unreasonable seizures of persons and the Eighth Amendment ban on cruel and unusual punishment.  The Supreme Court has held that the analysis of a 1983 claim is judged in reference to that specific constitutional right and not any external "excessive force" claim.  Id.

Turning to the claim of excess force under the Fourth Amendment, the Fourth Amendment prohibits unreasonable seizures of the person.  Determination of "whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion Fourth Amendment interest against the countervailing governmental interests at stake."  Id.  Such balancing includes "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.  The Supreme Court has recognized that the "right to make an arrest or investigatory stop necessarily carried with it the right to use some degree of physical coercion or threat thereof to effect it."  Id.

In addition, government officials may assert the defense of qualified immunity which immunizes them from suit.  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).

We begin by noting that there is no direct evidence that Michelle Knight was involved in the actions alleged to have constituted excessive force of Crawford and therefore the claims of excessive force based on the Fourth Amendment will be dismissed against her.

11

1    With regard to the alleged excessive force against Plaintiff
2 Stephen Pyle by Crawford, Plaintiffs claim that Crawford used
3 excessive force in handcuffing Pyle when he was on the telephone
4 and then tightening the handcuffs too tight.

5    The facts presented by both Plaintiffs and Defendants indicate
6 that Pyle was informed by Crawford that he was under arrest and
7 that Pyle then requested to inform Hinkle that he was being taken
8 to the jail.  However, Pyle did not just talk to his girlfriend
9 once in the office; Pyle also then answered a telephone call and
10 refused to put down the phone when requested by Crawford.  At this
11 point, Crawford found it necessary to restrain Pyle and to use
12 handcuffs on him due to his refusal to listen to Crawford's
13 instructions.

14    We find the use of handcuffs by Crawford was objectively
15 reasonable in light of the circumstances.  In particular, Pyle had
16 refused to comply with Crawford's instructions and therefore
17 created an air of resistance to the arrest.  The Supreme Court
18 recently upheld the use of handcuffs during a lawful detention of a
19 suspect.  Muehler v. Mena, 544 U.S. 93, 309 (2005).  As Crawford
20 was lawfully detaining Pyle pursuant to a valid warrant, Pyle's
21 claim that use of handcuffs on him for detention was excessive is
22 without merit.

23    As for Pyle's claim that Crawford tightened the handcuffs and
24 laughed when Pyle cried complaining that the handcuffs were too
25 tight, we find that Pyle has presented an issue of material fact as
26 to whether excessive force was used on him while in the handcuffs.
27 While Crawford was authorized to use handcuffs in arresting Pyle,
28

12

he was not authorized to use more force than necessary and to tighten the handcuffs too tight on Pyle.  Pyle has presented evidence in his affidavit, the affidavit of Hinkle and by the fact that he was taken to see a doctor for complaints of pain to his wrists that excessive force was applied to him with the handcuffs during his arrest.

As for Hinkle's claim of excessive force against her when she approached Pyle and reached for the phone from Pyle's hand, Plaintiffs have presented an issue of material fact as to whether Crawford applied excessive force to Hinkle.  In particular, it is unclear whether Hinkle was aiding Pyle in resisting arrest or whether she was simply reaching for the phone.  Because it is not clear whether she was aiding in the resisting of arrest or simply grabbing the phone from Pyle's hands, it is also unclear whether Pyle's pushing Hinkle aside would constitute excessive force. While Crawford retained the authority to protect himself while effecting the arrest of Pyle, he did not have the authority to apply force to Hinkle if she was not attempting to aid Pyle in resisting arrest.

Plaintiffs do not claim that excessive force was applied to them while they were imprisoned and therefore their claim for excessive force under the Eighth Amendment fails and will be dismissed. Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2324 (1991).

**Qualified Immunity**

Defendants claim that even if excessive force was applied to Crawford or Hinkle, that they are entitled to summary judgment on grounds of qualified immunity.

Qualified immunity shields an officer from suit when he or she "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 199 (2004).

Under Saucier v. Katz, we must ask, first, "whether the facts alleged show the officer's conduct violated a constitutional right"; and if so, we ask "whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 2000 (2001).

Here, Plaintiffs have provided sufficient evidence that there is a question of material fact as to whether Crawford applied excessive force to Hinkle and Pyle in violation of the Fourth Amendment.

Under a claim of excessive force, the law is clearly established when an officer's conduct is so patently violative of the constitution that the offending officer without judicial guidance that the action was unconstitutional, and that lack of case law prohibiting the particular conduct does not preclude a conclusion that the law is clearly established. Deorle v. Rutherford, 272 F.3d 1272, 1286 (9th Cir. 2001).

Here, excessive force in the application of handcuffs would be patently violative of the constitution and Crawford would have been aware that his actions were unconstitutional. While Crawford was constitutionally allowed to apply handcuffs to Pyle, he was not

14

1 | constitutionally allowed to tighten the handcuffs causing Pyle
2 | excessive pain.

3 | With regard to Hinkle, Plaintiffs have presented sufficient
4 | facts that Crawford's application of force to her would have been
5 | patently violative of the constitution and Crawford should have
6 | been aware that his actions were unconstitutional.  Plaintiffs have
7 | provided evidence that from their point of view Hinkle was not
8 | attempting to aid Pyle in resisting arrest and that Crawford pushed
9 | her back three or four feet when she approached Pyle.  This, we
10 | find, provides an issue of material fact as to whether Crawford's
11 | application of force was patently violative of the constitution.

12 |

13 | **Esmeralda County Liability for Crawford's Actions**

14 | Generally, a party may demonstrate municipal responsibility
15 | for a federal constitutional violation in one of three ways.
16 | First, Plaintiff may show that an individual with policymaking
17 | authority within the municipality was guilty of the conduct that
18 | led to the injury.  Pembaur v. City of Cincinnati, 475 U.S. 469,
19 | 480 (1986).  Second, Plaintiff might prove that the municipality
20 | caused the injury by showing the violation was the result of a
21 | municipal custom.  Id.  Finally, Plaintiff might show that the
22 | constitutional violation is the product of inadequate training on
23 | the part of the municipality.  Id. (citing City of Canton v.
24 | Harris, 489 U.S. 378, 389 (1989)).

25 | Here, Plaintiffs have failed to provide any evidence that (1)
26 | an individual with policymaking authority was guilty of the
27 | conduct, (2) Crawford's applied alleged excessive force was a

28 |

15

custom of the county, or (3) Crawford was inadequately trained.  As we explained above, allegations that Crawford told Pyle that Knight instructed him "to do what he was doing" does not provide evidence that Knight had in fact instructed him to commit a constitutional violation and to apply excessive force to Pyle.

Therefore, although Pyle may have applied excessive force to Pyle and Hinkle, the County and the County Sheriff's Office are not liable for those constitutional violations and summary judgment on this claim will be granted.

**E.   Battery**

To establish a claim of battery, Plaintiffs must show that Defendant Crawford (1) intended to cause harmful or offensive contact, and (2) such contact did occur.  <u>Switzer v. Rivera</u>, 174 F. Supp. 2d 1097, 1109 (D. Nev. 2001).

Under Nevada state law, "a police officer who uses more force than is reasonably necessary to effect a lawful arrest commits a battery upon the person arrested."  <u>Yada v. Simpson</u>, 112 Nev. 254, 256, 913 P.2d 1261 (1996).  Here, Plaintiffs have presented an issue of material fact as to whether Crawford used more force than reasonably necessary in keeping the handcuffs too tight while arresting Pyle.

There is also a question of fact as to whether Defendant Crawford committed a battery against Plaintiff Hinkle.  In particular, there is an issue of material fact as to whether Crawford was effecting an arrest with which Hinkle was interfering, or whether Hinkle was simply an innocent bystander Crawford offensively touched.

16

**F.  Malicious Prosecution**

Under Nevada law, to prove a claim of malicious prosecution, Plaintiffs must prove "(1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage." <u>Jordan v. Bailey</u>, 113 Nev. 1038, 1047, 944 P.2d 828, 834 (1997).

Here, the facts do not indicate a want of probable cause to initiate the criminal proceeding.  Plaintiffs have failed to provide this court with sufficient evidence that Crawford did not have probable cause.  As it stands, Crawford has provided evidence that he interviewed several people and came to the conclusion that Frank Lawrence's property had been stolen.  Through interviews with Lawrence, Lawrence's wife and the people to whom Pyle had sold the property, Crawford came to the reasonable conclusion that Pyle had stolen the titles to the vehicles at the time he aided Lawrence in his apartment move.  Plaintiffs have provided no evidence that Crawford received clues that would have led him in the opposite direction or that he failed to complete a thorough investigation.

As such Plaintiff's claim for malicious prosecution fails and will be dismissed.

**G.  Abuse of Process**

Under a claim for abuse of process under Nevada law, Plaintiffs must prove "(1) an ulterior purpose by defendant other than resolving a legal dispute; and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." <u>Posdas</u>, 109 Nev. at 457.

Here, Plaintiffs have failed to show an ulterior motive on the

17

part of Crawford.  Plaintiffs only explanation for a claim of ulterior motive is that for some mysterious reason, Crawford was out to get Pyle.  This is not a basis to provide an issue of material fact as to whether Crawford had an ulterior motive. Conclusory allegations without factual support cannot create an issue of material fact.

Plaintiffs' claim for abuse of process, therefore, will be dismissed.

## H.  Defamation

Under Nevada law, for a claim of defamation, Plaintiff must prove "(1) a false statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages." Wynn v. Smith, 117 Nev. 6, 11, 16 P.3d 424 (2001).

Here, Plaintiffs have not provided evidence to support the elements of this claim.  In particular, they have not proved what the "false statement" by Crawford was, to whom it was published, and the fact that Crawford exhibited negligence in making the statement.  In fact, as we have explained above, we find that Crawford conducted a sufficient investigation of the case that would not be characterized as "negligent."[5]

Plaintiffs' claim of defamation, therefore, will be dismissed.

_____

[5]Plaintiffs make the unsupported conclusory allegation that "imputing criminal activity to another is per se defamation under Nevada law when the charges cannot be sustained."  We find no such basis in the law that this is true and even if it were true, Crawford was acting pursuant to a valid warrant for arrest that he obtained after a reasonable investigation into the case.  This demonstrates that there was no negligence on his behalf.

18

I.   **Negligence**

Plaintiffs claim of negligence relates to the failure to train and/or supervise its officers by Esmeralda County Sheriff's Office.[6]

For a claim of negligence to survive, Plaintiffs must prove (1) Esmeralda County Sheriff's Office owed a duty of care to him; (2) Defendants breached that duty; (3) the breach was the legal cause of Plaintiffs' injury; and (4) Plaintiffs suffered damages. Perez v. Las Vegas Medical Center, 107 Nev. 1, 4, 805 P.2d 589 (1991).

Here, Plaintiffs have failed to show how the Esmeralda County Sheriff's Office failed to adequately train its officers.  In particular, Plaintiffs have not shown how their injuries were caused by inadequate training.  Because of this, Plaintiffs' claim of negligence fails and is dismissed.

J.   **Deprivation of Property**

The forced removal of property can constitute a seizure of property for the purposes of the Fourth Amendment as well as a deprivation of property under the Fifth and Fourteenth Amendments. Soldal v. Cook County, 506 U.S. 56, 69-71 (1992).

The Ninth Circuit has held that a seizure of property for the purpose of a criminal investigation is not a violation of the Fourth Amendment.   Sanders v. City of San Diego, 93 F.3d 1423, 1428-29 (1996).  Here, the seizure of the two pick up trucks and

---

[6]If Plaintiffs' claim is for negligence regarding the false arrest, we follow the same analysis above for false arrest.

19

the trailer were central to the criminal investigation.  Pyle was
charged with theft and therefore there was no violation of the
Fourth Amendment on account of their seizure.  As we have noted
above, the criminal investigation resulted in a facially valid
warrant and Plaintiffs have presented no evidence to defeat the
validity of the arrest.[7]

The Ninth Circuit has further noted that "we have found no
case in which compliance with the Fourth Amendment in the context
of a criminal investigation or proceeding has been held not to
satisfy due process as well.  Nor have we found any case that
addresses whether a seizure of property as evidence in a criminal
investigation must comply with any other constitutional standard
than that of the Fourth Amendment in order to satisfy due process."
Sanders, 93 F.3d at 1429.  Because Plaintiffs have raised no issue
of material fact as to whether the seizure of the vehicles
constituted a violation of deprivation of property for purposes of
the Fourth Amendment, under Ninth Circuit law, we will dismiss the
claims of deprivation of property under the Fourteenth Amendment as
well.

[7]In line with this, it bears no relevance to our analysis who
owned title to the pick up trucks–the vehicles were the subject of a
crime which Pyle was charged with.  Whether or not Kuder registered
the vehicle makes no difference to the outcome on this issue.

20

**K.   Violation of Due Process of Fourteenth Amendment[8]**

Plaintiffs' claims of violation of due process of the Fourteenth Amendment relate to the fact that their property (the pick up trucks and trailer) was taken without "due process."

As the Ninth Circuit has held that deprivations of property pursuant to a criminal investigation are not subject to any further constitutional protections other than those imposed by the Fourth Amendment, we will dismiss Plaintiffs' claim of violation of due process under the Fourteenth Amendment.  <u>Sanders</u>, 93 F.3d at 1429.

**L.   Intentional Infliction of Emotional Distress**

To establish a cause of action for intentional infliction of emotional distress, Plaintiffs must prove: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) severe or extreme emotional distress suffered by the plaintiffs; and (3) actual or proximate causation."  <u>Jordan v. State ex rel. DMV & Pub. Safety</u>, 110 P.3d 30, 57 (2005).

Although Plaintiffs may have been able to provide an issue of material fact as to whether Crawford's actions were "extreme and outrageous conduct," they have not demonstrated that they suffered any emotional distress from the incident.  Plaintiffs have only

---

[8]First, we note that "<u>Graham</u> foreclosed the use of substantive due process analysis involving the use of excessive force in effecting an arrest and held that such claims are governed solely by the Fourth Amendment's prohibitions against 'unreasonable' seizures, because the Fourth Amendment provided the explicit source of constitutional protection against such conduct."  <u>Chavez v. Martinez</u>, 538 U.S. 760, 774 (2003).  Therefore, Plaintiffs' claim of violation of substantive due process cannot be based on a claim of excessive force.

1   shown their physical ailments resulting from Crawford's alleged

2   physical attack on them.

3       Because they have failed to provide evidence as to emotional

4   distress actually suffered, Plaintiffs' claim of intentional

5   infliction of emotional distress will be dismissed.

6       **IT IS, THEREFORE, HEREBY ORDERED** that the Defendants' Motion

7   for Summary Judgment (#16) as to the claims of conspiracy to

8   violate civil rights, false arrest, malicious prosecution,

9   intentional infliction of emotional distress, deprivation of

10  property, violation of due process, negligence, abuse of process,

11  false imprisonment, and defamation is **GRANTED.**  Defendants' Motion

12  for Summary Judgment (#16) as to Esmeralda County, Esmeralda County

13  Sheriff's Office, and Michelle Knight as to all claims is **GRANTED.**

14

15      **IT IS FURTHER ORDERED** that Defendant's Motion for Summary

16  Judgment (#16) on the claims of excessive force, qualified immunity

17  and battery claims against Defendant Crawford is **DENIED.**

18

19  This __21st__ day of February, 2006.

20

21

22                                    Edward C. Reed.

23                                    _____

                                     UNITED STATES DISTRICT JUDGE

24

25

26

27

28